CONTINENTAL & COMMERCIAL TRUST & SAVINGS BANK v. McCARTY.

(Circuit Court of Appeals, Ninth Circuit.    July 3, 1911.)

No. 1,943.

WATERS AND WATER COURSES (§ 252*)—STOCKHOLDERS—SUPPLY OF WATER—CONSTRUCTION OF CONTRACT.

Defendant, who had purchased land within an irrigation system being constructed under a contract with the state, bought stock in the corporation organized to maintain and operate such system which entitled him to water for irrigation of his land, entering into a contract by which he made an initial payment and agreed to pay the remainder in annual installments. The contract provided that he should pay the first installment, with interest on all, November 1st following, but further, in accordance with the requirement of the contract with the state for construction of the system, that interest should be payable from April 1st if water was available for irrigation of the land during the irrigation season, but, if not, to commence when such water was available; that "no payment other than the initial payment, and no interest shall be required to be paid under this contract until the water is available * * * and such water must be available at the beginning of the irrigation season in order to make such payments become due, and all payments and interest * * * shall be advanced in time according to the delay in the delivery of the said water." The contract was secured by a lien on the land and with other like contracts, and, as provided therein, was assigned to a trustee to secure bonds of the corporation. The irrigation season extended from April 1st to November 1st, and water was not available for defendant's land until May 14th. *Held* that, under such contract, no payment of interest or principal became due or collectible by the assignee until one year from the 1st of the ensuing November, and that interest commenced to run from the 1st of April of the next season.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 252.*]

Appeal from the Circuit Court of the United States for the District of Idaho.

Suit in equity by the Continental & Commercial Trust & Savings Bank against Charles W. McCarty. Decree for defendant, and complainant appeals. Affirmed.

The appellant, as trustee under a deed of trust, brought a suit for the foreclosure of a lien created by a contract assigned to it as security for an issue of bonds. The lien was executed by the appellee, and it covers certain lands situate in the state of Idaho, together with a certificate of stock representing water rights for the irrigation of land. The court below sustained a demurrer to the bill, and dismissed the same. The facts set forth in the bill are in substance the following: That on May 1, 1908, the Kings Hill Irrigation & Power Company, a corporation, entered into a contract with the state of Idaho for the construction of an irrigation system for the reclamation and irrigation of several thousand acres of land which had been segregated from the public domain under the act of Congress known as the "Carey Act" (Act Aug. 18, 1894, c. 301, 28 Stat. 372). The contract provided that, before the land should be thrown open for entry, a corporation to be known as the Glenn's Ferry Canal Company should be organized for the purpose of maintaining and operating the irrigation system; that it should have a capital stock of 25,000 shares, each share to represent an undivided interest in the system based upon the number of shares finally sold; that each share should represent sufficient water for the irrigation of one acre of land; that the entire capital stock should be issued to the Kings Hill Irrigation & Power Company in full payment for the irrigation system; and that said stock

should be sold to persons who desired to enter the land, and to owners of other lands susceptible of irrigation from the system. Payments for said stock were to be made as follows: $6.50 per share at the time of purchase, and the remainder in nine equal annual deferred payments with interest at 6 per cent. per annum. The Irrigation & Power Company having constructed the irrigation works, the appellee desired to enter certain parts of said land, and, with that end in view, purchased 42.97 shares of the capital stock of the Glenn's Ferry Canal Company, sufficient to irrigate 42.97 acres of land which the appellee filed upon under the Carey act. In purchasing his stock the appellee entered into a contract with the Irrigation & Power Company whereby the latter was given a first lien on the land on which the appellee filed for the amount due it in nine deferred annual payments of $279.31 each. The appellee under his contract agreed to pay the irrigation company his first deferred payment on November 1, 1909, and agreed to pay interest on all deferred payments on said date, the interest to be computed from April 1, 1909, at 6 per cent. per annum. The contract contained, however, the following qualifying clause: "Interest from April 1, 1909, at six per cent. per annum may be charged if water is available from said. irrigation system for use during the irrigation season of 1909, and, if not available for said season, interest shall commence when such water is available. But it is further understood and agreed that no payment other than the initial payment, and no interest shall be required to be paid under this contract until the water is available for distribution from said irrigation system at a point within one-half mile of each legal subdivision of one hundred sixty acres, and such water must be available at the beginning of the irrigation season in order to make such payments become due, and all payments and interest provided in this contract shall be advanced in time according to the delay in the delivery of the said water as aforesaid." The following provision was also contained in the contract: "This contract is made pursuant to and subject to the contract between the company and the state of Idaho, and the existing laws of said state, and is to be construed in conjunction with said contract and said laws." The contract between the state and the irrigation company contained the following provision: "It is further agreed that no payment other than the initial payment, and no interest shall be required under any contract, either for Carey act lands or state or private lands, until the water for the said land is available from said canal for distribution at a point within a half mile of each legal subdivision of one hundred sixty (160) acres of the said land. and such water must be available at the beginning of the irrigation season in order to make such payments become due, and all payments and interest provided in said contract shall be advanced in time according to the delay in the delivery of said water as aforesaid." In the Revised Codes of Idaho, section 3306 provides that owners or persons in control of any ditch, canal, or conduit used for irrigation purposes shall maintain the same in good order and repair ready to deliver water by the 1st of April in each year. In the bill it was alleged upon information and belief that the irrigation system described in the contract between the appellee and the appellant was so far completed on May 14, 1909, that water on said date became available, and ever since has been available, for the irrigation of the lands described in the contract.

Richards & Haga, for appellant.
B. S. Crow, for appellee.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The single question presented by the demurrer is whether a cause of suit has arisen in favor of the appellant. The contract provides that the appellee shall pay on November 1, 1909, the first deferred payment and interest on all deferred payments from April 1, 1909, but it proceeds

in the next paragraph to provide that the interest may be charged if water is available from the irrigation system for use during the irrigation season of 1909, and that, if not available for said season, the interest shall commence when such water is available, and that no payment, other than the initial payment, and no interest shall be required to be paid under the contract until the water is available, and that such water must be available at the beginning of the irrigation season in order to make such payments become due, and that all payments and interest provided in the contract shall be advanced in time "according to the delay in the delivery of the water as aforesaid." The appellant contends that the paragraph is ambiguous, the ambiguity arising from the phrase, "and, if not available for said season, interest shall commence when such water is available." But that sentence is controlled by the provision which follows: "And such water must be available at the beginning of the irrigation season in order to make such payments become due." The contract was made upon a printed form presented to the appellee for his signature, and, if there is ambiguity in it, doubtful terms are to be construed favorably to the appellee. But we find no substantial difficulty in the way of construing the contract as a whole.

It is not disputed that the irrigation season in the locality of the appellee's lands is the period between April 1st and November 1st. The contract, when all its terms are considered, makes it clear that, if water for irrigation is not available at the beginning of the first irrigation season, no payment either of principal or interest is to be made until the end of the next ensuing season at the beginning of which the water shall be available for use. Counsel for the appellant argue that such a construction is unreasonable and unjust; that the water might be available on the 2d of April, 1909, and the appellee might have all the benefit thereof for the season, and yet, under the construction so adopted, no compensation could be collected for the use thereof. But that argument does not meet the case presented by the bill. It is not therein alleged that the water was available for substantially the whole of the irrigation season of 1909. It is alleged that it was available on May 14th. The use of the water from May 14th to the end of the season may or may not have been of considerable value to the appellee. Of that we need not inquire. The parties saw fit to contract for the use of the water for the irrigation season as a whole. They made clear their intention that if the use of the water was delayed until after the beginning of the first irrigation season, so that the appellee could not receive substantially what he contracted for for that season, all payments of principal and interest should be advanced one year. The construction contended for by the appellant that interest began to run from May 14th, the day when the water was in fact available, would involve the unjust and unreasonable conclusion that if the water had been furnished on the 1st of October, which was practically at the end of the irrigation season, interest would have run from that date.

The contention is made that the delay in furnishing the water for the irrigation season of 1909 cannot affect the right of the appellant

to sue upon the bonds for the reason that it is the assignee thereof, that by the contract the appellee agreed to make the payments to the assignee and to look to the irrigation company for the performance of its covenants, and that the stipulation that the contract might be assigned is a waiver of the right of set-off or recoupment. But the appellee does not base his defense upon any claim of equities as against the irrigation company. He asserts no equities or set-off, and seeks no recoupment. His defense rests solely upon the nonperformance of the conditions of the contract; and the single question is presented whether the contract has been performed according to its terms so that a right of action has accrued to the appellant. That question is in no way affected by the assignment or by the stipulation that an assignment might be made.

The decree is affirmed.